[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
This is a Complaint for Interpleader, brought pursuant to General Statutes § 52-484, by Mark A. Balaban, stakeholder for a certain escrow account established in accordance with an escrow agreement entered into by the defendants, Michael K. and Karen T. Malin ("the Malins") as buyers, with G.F. "Construction Inc., by its president, Gary Faiman, ("Faiman") as seller, in connection with the purchase and sale of property designated as 2 Misty Meadows Lane in the town of Hamden.
The stakeholder brings this action, alleging that the parties to said escrow agreement have been unable to agree as to which is entitled to the funds in escrow, seeking from the court such determination and asking that the complainant be discharged from all liabilities to the defendants in relation thereto.
This complaint was filed in the Middlesex District Court. On July 15, 1997, that Court (Higgins, J.) ordered the matter transferred to the New Haven Judicial District (where related suits were pending); granted complainant's Motion for Attorney's Fees in the amount of $1,662.50, together with costs of $322.35; and directed complainant to file an accounting with the Clerk of the New Haven Judicial District Court and to pay the balance of the said escrow account to that Clerk, to be held pending the outcome of this action. On July 23, 1997 complainant filed his accounting and deposited the balance of said escrow account, in the amount of twenty eight thousand, three hundred seventy five dollars and eighty five cents ($28,375.85) with said clerk.
A hearing, at which the Malins and Faiman pressed their claims, opened on February 18, 1998, continued on March 24th and to March 25th when the parties rested.
 II
On or about August 3, 1994, Faiman, a builder, agreed to sell to the Malins a single family house Faiman was building on Lot #1, Misty Meadows Subdivision in Hamden. The purchase price was two hundred eighty eight thousand, six hundred sixty dollars ($288,660.00). (Agreed extras later raised the price to CT Page 9563 $306,000.00)
At the time of closing on the subject property, October 19, 1994, the parties recognized that construction on the property was not complete. In order to ensure completion as agreed, the parties entered into an agreement (Exhibit G) under which the sum of thirty thousand dollars ($30,000.00) of the closing proceeds was to be held in escrow.
By terms of the escrow agreement the Malins were to "cause a licensed Home Inspector(s) or Builders(s) to inspect the property and provide a written itemized report which set forth a breakdown of the necessary repairs or costs to complete or remedy any and all uncompleted, defective, or otherwise unsatisfactory items on the above referenced property. Said report shall also contain the necessary cure for any repair or uncompleted items."
The report was to be delivered to the seller by a date certain, after which seller was given time to effect "necessary corrections, repairs, or complete items set forth in the above-referenced report. At that time buyer's inspector shall re-inspect the property" and "shall then issue a revised report which shall set forth the uncompleted items outstanding from the original report."
For purposes of deciding this complaint for interpleader, the court considers the next paragraph of the said escrow agreement crucial:
"The total cost of the completed items, as a result of seller's corrections, completions and repairs for same from original report, shall be delivered to seller by escrow agent forthwith."
Next, the seller is given further time "to complete any and all remaining deficiencies from inspector's report." Then, "In the event that Buyer and Seller cannot agree upon a satisfactory resolution of any and all remaining items outstanding, then Buyer's inspector(s) shall issue a third and final report of outstanding items".
Next, "In the event that seller does not agree to release remaining escrow funds corresponding to outstanding items on said list to buyer as a full accord and satisfaction of same, the parties shall agree on a third-party arbitration or seek redress in the Superior Court of the state of Connecticut." CT Page 9564
The agreement closes with a final caveat "The above escrow shall be limited to any deficiencies, defects, uncompleted or unsatisfactory items which shall be enumerated in Buyer's inspector's report as set forth above."
Thus, the escrow agreement outlined a series of steps to be taken in sequence. The court finds that significant aspects of the agreement included the following:
1. The inspector was to be chosen by the buyer.
2. The seller undertook to do work necessary to complete or correct items as designated by the inspector.
3. Following issuance of the inspector's second, revised, report, the escrow agent was to deliver to the seller the total cost of the items completed by seller following issuance of the first report.
4. Seller is then given the opportunity to complete outstanding items. In the event of disagreement between buyer and seller regarding any remaining items outstanding, the inspector will issue a third and final report.
5. After receipt of the final report, seller is to agree to release to buyer remaining escrow funds "corresponding to outstanding items", as listed in the final report (or "seek redress" via arbitration or the court). By clear implication, if the escrow balance was in excess of the cost of "outstanding items", any monies remaining in the account after release to buyer of funds "corresponding to outstanding items" would go to the seller.
 III
Pursuant to the escrow agreement the Malins engaged the services of James Monarchio, a licensed home inspector. Monarchio inspected the premises, talked with the Malins and with Faiman and issued his first report, dated October 25, 1994 (Exhibit A). Monarchio listed a series of items that he deemed necessary to bring the property "to an acceptable level by industry standards." He estimated the total cost of such items to be forty nine thousand, four hundred ninety seven dollars ($49,457.00). CT Page 9565
Subsequently, Monarchio issued three revised reports, the last dated 12/24/94. During the period October to December 21, 1994 Faiman continued work on the subject property. On December 21, Dr. Malin ordered Faiman off the property and refused to allow him to do further work. In his final report of December 24th, Monarchio listed the items he deemed not yet completed satisfactorily, as well as those he deemed completed satisfactorily. Monarchio concluded that the cost of work completed by Faiman was nineteen thousand, seven hundred thirteen dollars ($19,713) with a total cost remaining of twenty nine thousand, two hundred ninety nine dollars. ($29,299.)
The Malins claim that the full sum of the escrow balance, $28,375.85, should be awarded to them. They allege that following the inspector's final report there remained nearly $30,000 worth of items, not yet completed satisfactorily. Conceding partial completion by Faiman, the Malins argue that Faiman has not "substantially performed" and should not be permitted to recover, as a matter of law, any of the escrow recover, citing Edens v.Kole Construction Co, 188 Connecticut. 489.
Faiman takes issue with the inspector's report, arguing that the inspector accepted the Malins' claim uncritically; challenging inclusion of certain items; criticizing the inspector's method of pricing and the pricing of specific items; arguing that the Malins were unreasonable in their demands and impossible to satisfy. G.F. Construction asks that the escrow account monies be turned over to it, G.F. Construction having completed its work in a satisfactory manner. Implicit in G.F. Construction's position is that it has substantially performed under the contract.
 IV
The court finds the Malin's appeal to the doctrine of substantial performance inapposite. First, the Malins ordered Faiman to cease work on the property on December 21st, thus ensuring he could not perform the work listed by the inspector on his final report as incomplete or not completed satisfactorily. Second, and more important, it was the intent of the parties to the escrow agreement, as evidence by the text, that "the total cost of the completed items, as a result of seller's corrections, completions and repairs for same from original report, shall be delivered to seller by escrow agent forthwith." Such payment was not conditioned on substantial performance by Faiman of all items CT Page 9566 of work listed by the inspector in his initial report as required. Quite to the contrary, Faiman was to be credited for work satisfactorily performed. Disputes as to remaining items outstanding and the disbursement of remaining monies, if any, in the escrow account were left to be decided subsequently.
Accordingly, this court's task is not to rule on all issues outstanding between the parties, but equitably to distribute the funds currently In the escrow account. This requires, in the first instance, that the court make a determination of the cost of work satisfactorily completed by Faiman in striving to meet the reasonable requirements of the inspector.
The testimony of Mr. Monarchio was uncontroverted, that Faiman and G.F. Construction had completed work at a total cost of nineteen thousand, seven hundred thirteen dollars ($19,713.00). At the time of trial, the Malins conceded that Faiman had completed several additional items listed by Monarchio as outstanding for a total cost, as estimated by Monarchio, of six hundred fifty dollars ($650.00). The court finds Monarchio's estimates of cost of this work completed to be reasonable The cost of work completed by Faiman in the period October 21 through December 21, 1994 is, accordingly, twenty thousand, three hundred sixty three dollars ($20,363.00).
Were the court to award G.F. Construction $20,363.00 the sum of $8,012.85 would remain in the said account. If the court finds the cost of items outstanding equals or exceeds $8,012.85, then the full sum would be awarded to the Malins. If the court finds the cost of items outstanding to be less than $8,012.85, the difference between that cost and $8,012.85 would be awarded to G. F. Construction.
The court concludes that the Malins have established, by a fair preponderance of the evidence, that the cost of items left uncompleted or not satisfactorily completed by G.F. Construction equals or exceeds the sum of $8,012.85.
In determining items which G.F. Construction failed to complete satisfactorily, the court relies strongly on the testimony of Mr. Monarchio, buttressed by the Schaefer report (Plaintiffs Exhibit B).
The court finds that the evidence offered failed to support certain of the Malins' claims. These include a second retaining CT Page 9567 wall (Item A. 1, Exhibit E): storage room and study closets (B.3 and B.13); fireplace gravel (B.6); installation of outlet and transformer (B.7). The Malins failed to establish the need for the second retaining wall to bring the construction to acceptable standards; the storage room closet was allegedly agreed to orally, and would constitute a code violation, which the court will not credit as against public policy; and Dr. Malin conceded his description of the outlet sought was incorrect (Defendant's Exhibit 6). The court concludes there was no "meeting of the minds" between Faiman and the Malins regarding installation of this item at what appears to be an astronomical cost.
The court allows the following items as uncompleted and deems their estimated cost reasonable:
A. 1 ($400); A.5 gutters and leaders ($990); A.6 ($225); A.7 driveway ($1,950); A.8 ($300): B.8 ($245): B.9 ($65); B.12 ($890);[1] D.3 ($69 and $180); D.5 ($80); D8 ($1, 250); D.9, last item, ($400). These items have a total cost of $7, 044.00 and that amount will be credited to the Malins.
There remain unaccounted for certain major cost items, namely:
A.2 Correctly grade rear yard ($4,200.00).
D.7. Install water filtering system ($3,600).
D.9 Interior painting ($3,700).
The court is persuaded, by a fair preponderance of the evidence that, the problems underlying these items did exist and that correction of them was necessary to bring the quality of construction of the subject property up to acceptable standards. However, the court will not adopt the estimated cost of these items. The court finds that the evidence establishes that the costs of correctly grading the rear yard, installing a water filtering system and completing needed interior painting together equals or exceeds the sum of nine hundred sixty eight dollars and eighty five cents ($968.85). Accordingly, all amounts remaining in the said escrow account after deducting monies awarded to G.F. Construction for work completed, will be awarded to the Malins.
There remains the issue of the monies awarded the stakeholder for attorney's fees and costs, in the amount of $1,984.15. Simply to take this amount "off the top" (from the original $30,000.00) CT Page 9568 means in effect that the Malins bear the full cost of the stakeholder's services. The court believes it equitable that both the parties share evenly in this expense. Therefore, the sum of $992.08, representing half the amount awarded to the stakeholder, will be deducted from the court's award to G.F. Construction and will be credited to the Malins.
 V
Based on the evidence and testimony presented the court finds that defendant and claimant G.F. Construction has established, by a fair preponderance of the evidence, its claim to monies held in said escrow account, in the amount of $20,363.00, less the sum of $992.08, representing half the sum of $1,984.15 previously awarded to the stakeholder.
Accordingly, following expiration of the applicable appeal period, the Clerk of the Court is directed, on demand, to disburse to the claimant, G.F. Construction, Inc., the sum of nineteen thousand, three hundred seventy dollars and ninety two cents ($19,370.92).
Based on the evidence and testimony presented, the defendants and claimants Michael and Karen Malin, have established their claims to all monies remaining in said escrow account after the above-ordered disbursement to claimant G.F. Construction.
Accordingly following expiration of the applicable appeal period the Clerk of the Court is directed, on demand, to disburse to the claimants, Michael and Karen Malin, the sum of nine thousand, four dollars and ninety three cents ($9,004.93).
By the court
Downey, J.